HENRY M. GAGE *vs.* MAINE CENTRAL RAILROAD COMPANY.

Penobscot.   Opinion March 4, 1913.

*Accident.   Assumption of risk.   Claim.   Damages.   Due care.   Fright. Motion.   Notice.   Shifting of cars.*

1. The plaintiff, having been directed by the defendant's servants to unload the potatoes into the car, had the right to back his cart up to the car for the purpose of unloading them into the car, and the defendant should have known that he would naturally back close to the car, and that if they backed an engine against the train of which the car that the plaintiff was directed to unload into was one that the shock might throw an inexperienced man from his feet and move the car so that the horses might be startled or frightened.
2. The defendant owed him the duty, while he was lawfully in the car, to do no act that might cause him injury without sufficient notice to him to enable him to guard against injury.

3.  The plaintiff was lawfully in the car by the defendant's direction and in the exercise of due care and the defendant, by backing its engine against the car, without warning him, was not exercising due care toward him and for damages sustained by him to his person, or property, by reason of the defendant's want of due care, the defendant is liable in this action.

On motion for new trial by defendant.  If the plaintiff within thirty days after the certificate is filed remits all of the verdict in excess of $337.50, motion overruled; otherwise motion sustained.

This is an action on the case to recover damages for an injury sustained to plaintiff's person and property, by reason of the negligence of the defendant.  The plaintiff had hauled a load of potatoes to Unity railroad station with his team, consisting of a pair of colts four and five years old and a cart.  He was instructed by the defendant's servants to unload the potatoes into a certain car and he backed his cart against the car.  He unloaded the bags of potatoes into the car and then went into the car, leaving his horses unhitched and unattended, to help carry the bags to the end of the car and empty them.  While so occupied in the car, a shifting engine hitched on to the string of cars, of which the car the plaintiff was in was one, forcing the car back and throwing him upon the scales and injuring him and frightening his horses, causing them to run away and injuring them also.  Plea, the general issue.  The jury returned a verdict for the plaintiff for $500.  The jury also found specially, at the request of counsel and direction of the court, that the damages for plaintiff's personal injuries were $337.50, and damages to the disposition of the horse were $162.50.  The defendant filed a motion for a new trial.

The case is stated in the opinion.

*Martin & Cook,* for plaintiff.

*Forrest Goodwin, and John Wilson,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

HALEY, J.  The 4th day of May, 1911, the plaintiff hauled a load of potatoes to Unity station, and backed his cart up against a freight car in the defendant's yard for the purpose of unloading

them. Before backing his cart up to the car he was instructed to unload into the car that he backed against. The horses the plaintiff was using at the time were a pair of colts, four and five years old. The plaintiff had used them together only two weeks at the time of the accident. He unloaded the bags of potatoes into the car, and then entered the car to help carry the bags to the end of the car and empty them. The team was left backed against the car, the horses unhitched and unattended. While plaintiff was in the car, carrying the potatoes to the rear end, the shifting engine of the defendant made a hitch to the string of cars, one of which was the car the plaintiff was in, and the plaintiff claimed at the trial that, when the engine came in contact with the car, the car he was in was forced violently back, that his foot caught under the scales, and he was thrown over the scales and upon them, and received injuries which consisted of a bad spot on his hip, that his knee was twisted, which caused him to be lame, and that he had not recovered from the injury to his knee at the time of the trial. The horses were startled by the movement of the car against which the cart was resting, and ran or trotted about twenty rods; the plaintiff got up from the floor of the car, jumped from the car, and started after the horses; the horses ran or trotted about eight rods, and then turned and ran on another street about twelve rods; the plaintiff ran across the triangular shaped lot between the two roads the horses passed over, and was near to the horses when they stopped.

The plaintiff claims damages for injuries received by reason of his fall in the car, although his attorney, when he made the claim upon the defendant for damages, in June after the accident, did not claim any injury to the plaintiff, and for injuries to the disposition of the four year old colt, which he claims has become unsafe to use by reason of the fright received and by the fact that he had run away.

The ad damnum of the writ was $500, and the jury found for the plaintiff with damages assessed at $500. At the request of counsel, the court directed special findings as to the damages, and the jury assessed damages for the plaintiff's personal injuries at $337.50, and damages to the disposition of the horse at $162.50.

The case is before this court upon a motion for a new trial, and it is claimed that the plaintiff assumed the risk of injury arising

from the ordinary shifting of the cars; that he knew, or ought to have known, that the cars were liable to be shifted; that there was no rough handling of the cars and nothing out of the ordinary, usual and proper method of shifting cars; that if he was injured, as he claims he was, that by voluntarily going into the car he assumed the risk of ordinary handling of the car, and was guilty of contributory negligence in not guarding against the result of the ordinary shifting, and was guilty of contributory negligence in leaving his horses unhitched and unattended, and also because he backed his cart solidly against the freight car, and should have known any movement of the car would have had a tendency to frighten them; that the horses were not frightened to any unusual extent, that they merely trotted a short distance and stopped of their own accord, and that the damages for the injury to the disposition of the four year old colt was unwarranted.

The plaintiff, having been directed by the defendant's servants to unload the potatoes in the car, had the right to back his cart up to the car for the purpose of unloading them into the car, and the defendant should have known that he would naturally back close to the car to unload, and that, if they backed an engine against the train, of which the car that plaintiff was directed to unload into was one, the shock might throw an inexperienced man from his feet, and move the car so that the horses might be startled or frightened.

They owed him the duty, while he was lawfully in the car, to do no act that might cause him injury, without sufficient notice to him to enable him to guard against injury.

The plaintiff was lawfully in the car by the defendant's direction, and in the exercise of due care, and the defendant, by backing its engine against the string of cars without warning to him, was not exercising due care toward him, and for damages sustained by him to his person, or property, by reason of the defendant's want of due care, the defendant is liable in this action.

From a reading of the evidence it seems improbable that the plaintiff was injured by the fall in the car to the amount awarded by the jury; but it was a question of fact for them, and if they believed the plaintiff's testimony, the damages awarded by them were authorized.

What evidence was there to support the plaintiff's contention that the disposition of the four year old colt was injured at that time? He was a spirited animal on the road, according to the testimony, and before the trouble at the car he "was a little nervous," and "wanted to go along." At the station he was undoubtedly the same, and started with his mate when the car pushed the cart. If they had been frightened they would have run more than from 300 to 325 feet with blankets fastened around their necks and dragging on the ground under their feet before stopping of their own accord. It does not seem possible that what took place at the railroad station could have so injured the horse's disposition that he became unsafe to use by reason of the fright and running 300 feet, and, if there has been any injury of the kind complained of, it is more than probable that it was caused the Sunday after, when the horse ran away.

The only evidence that the horse was uneasy when anything came up behind him or unsafe to use is that of his conduct after the following Sunday.

The accident was Thursday, May 4, 1911. There is no evidence that the colt was used again until Sunday, May 6th, when he was driven to the residence of Mr. Cook, a witness called by the plaintiff, who testified as follows: "Q. What do you know about the horse since the accident, have you observed him? A. I saw him run away one Sunday. Q. About what time was this? A. Well, I couldn't say for positive, but I think it was the first Sunday after the accident; I think it was; I couldn't —— Q. Where was this? Tell the circumstances. A. Mr. Gage came out to my place and wanted to know if I would go up and finish grafting. I live about two miles —— Q. I want to know about the horse running away, or anything on that day? A. We done our business, were talking, what we had to do, and he started for home, and I live at the top of quite a steep little hill, and the horse started. I think the *rattle of the wagon* made him nervous, and he went down the hill and kicked several times down the hill, and broke the harness, and Mr. Gage and the horses and the wagon landed out in the side of the road among some trees at the foot of the hill."

There was testimony that the horse was uneasy and restless when anything came up behind him, but all of the testimony of that

nature was after the runaway testified to by Mr. Cook, and if the change in the conduct of the horse was caused by his being frightened and running away, it is impossible to find from the evidence that it was caused by the fright at the railroad station; but if true that his disposition has been changed, all of the probabilities bear out the position of the defense that it was caused by the runaway Sunday, as detailed by the witness Cook. The evidence and probabilities did not authorize the finding that, if there was any change in the disposition of the colt, it was caused by the fright Thursday at the station instead of by his running away on the following Sunday. Whether the finding of the jury was the result of prejudice or bias and a desire to give the plaintiff the amount of the ad damnum of the writ, or a failure to properly weigh the evidence, we cannot tell; but there is no evidence that justifies the award for injury to the disposition of the horse, and the mandate should be,

> *If the plaintiff, within thirty days after the certificate is filed, remits all of the verdict in excess of $337.50, motion overruled; otherwise motion sustained.*